IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH F. HOLSON, | ) | CASE NO. 1:13 CV 725 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| WRH, Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |

This matter is before the Court on cross motions for summary judgment. Defendants have filed a Motion for Partial Summary Judgment (ECF #14), and Plaintiff has filed a Motion for Summary Judgment (ECF #15). Both motions are now fully briefed and ready for disposition. (ECF #19, 20, 21, 22). Plaintiff entered into a contract with the Defendants to provide consulting services. Defendants terminated the contract prior to its stated expiration date. Defendants claim the termination was "for cause," as defined by the contract, and they, therefore, do not have to pay Plaintiff for the remainder of the contract term. Plaintiff, on the other hand contends the termination was without cause, and he is entitled to full payment. There is also a dispute as to whether Plaintiff was fully compensated for the entire portion of the contract term that passed prior to his termination. For the reasons set forth below, this Court

hereby grants in part, and denies in part Defendants' Motion for Partial Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

### **Facts**[1]

Plaintiff, Mr. Holson, was the Chief Executive Officer ("CEO") of WIL Research laboratories, LLC for approximately twenty years before he stepped down in 2008. Following his resignation as CEO, Mr. Holson and the Defendants entered in a consulting contract for the period of November 1, 2008 through July 31, 2011. In February of 2009, Police raided Mr. Holson's home. On August 6, 2009, as a result of this raid, Mr. Holson pled guilty to a Bill of Information for two fifth degree felonies: (1) complicity (illegal use of a minor in nudity-oriented material or performance) in violation of Sections 2923.03(A)(2) and 2907.323(A)(3) of the Ohio Revised Code, and (2) possession of cocaine in violation of Section 2925.11(A) of the Ohio Revised Code. Mr. Holson was sentenced to two six-month prison terms, that were to run concurrently.

Following the raid, but before his guilty plea, Mr. Holson resigned from the Defendants' Board of Directors because he thought it would be in the company's best interest and it would "reduce the probability of continued publicity." He also issued an apology to the employees of WIL Research for the "negative impact his actions [were] having on the company." (Holson Depo. At 79:15-25; 137:17-23; Dep. Ex. 8). Mr. Holson did not, however, resign from or

---

[1]The factual summary is based upon the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are noted to be in dispute and will not be weighed by the Court on cross-motions for summary judgment.

otherwise voluntarily terminate the consulting agreement. On August 14, 2009, after his guilty plea but before he was sentenced, Defendants sent Mr. Holson a letter indicating that "as a result of [his] guilty plea to several criminal charges and the events surrounding those charges" they were terminating his consulting contract for cause, effective immediately, in accordance with the terms of the contract. The letter was signed by Dr. Roy Dagnall, Chairman of the Board of Directors for WRH and WIL Research Company, Inc..

After Mr. Holson was released from prison, he filed a lawsuit in the Ohio Court of Common Pleas against WRH, Inc., WIL Research Laboratories, Inc., and WIL Research Laboratories, LLC. In that lawsuit, Mr. Holson claimed that the consulting agreement was wrongfully terminated and that he was entitled to payment for the full length of the original contract. He also set forth claims for unjust enrichment and replevin. The Ohio Court dismissed the unjust enrichment claim at the summary judgment stage and certified that decision as a final judgment by specifically stating with regard to that issue alone: "in accordance with Civ. R. 54(B) that there is no just reason for delay." The remainder of the claims survived summary judgment. Little more than a month later, in April of 2012, however, Plaintiff voluntarily dismissed his state complaint without prejudice, pursuant to Ohio Civ. R. P. 41(a). In April of 2013, Plaintiff filed this suit in federal court as a diversity action. His federal complaint alleges breach of contract, and unjust enrichment. (ECF #1).

**Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

-3-

law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and

-4-

convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the

-5-

defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

I. Breach of Contract

Under Ohio law, "[a] plaintiff must present evidence on several elements to successfully prosecute a breach of contract claim. The elements are existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jornlin v. D.D.P., Inc.*, 2003

WL 22417189, ¶ 25 (Ohio Ct. App. 6th Dist. Oct. 24, 2003); *see also DPLJR, Ltd. V. Hanna*, 2008 WL 4885032, ¶ 16 (Ohio Ct. App. 8th Dist. Nov. 13, 2008). In this case, both the elements of Defendant's breach and Plaintiff's performance have been questioned. Plaintiff claims that Defendant breached the consulting contract by failing to pay him the remainder owed under the contract following his termination. Defendants' contend no payments were required because pursuant to the contract terms, Plaintiff was terminated for "cause," thus relieving them of their obligation to continue payments.

The consulting agreement entered into between Plaintiff and Defendants required that Plaintiff be paid $14,000 per month from the date of signing until July 31, 2011. (ECF #14, Ex. 1, ¶¶4, 5(a). If the contract was terminated by the Defendants "without cause" payments were required to continue through the full term of the original contract. (ECF #14, Ex. 1, ¶5(a)). However, if the contract was terminated by the Defendant "for cause" or voluntarily by the Plaintiff, payments would cease at the date of termination. (ECF #14, Ex. 1, ¶ 4).

Under the terms of the contract, "Termination for Cause" is defined as a termination of the agreement, by the Defendants as a result of one of the following circumstances:

> (I) the commission by or indictment of Consultant for a felony involving deceit, dishonesty or fraud, (ii) Consultant's failure to perform to the reasonable satisfaction of the chief Operating Officer of the Company and the Chief Executive Officer of Parent, the duties, responsibilities and/or services assigned or delegated under this Agreement, (iii) gross negligence or willful misconduct of Consultant with respect to the Company or (iv) material breach and/or non-compliance by Consultant of any of Consultant's obligations under this Agreement, which breach, in the reasonable judgment of the Board in its sole discretion, is not or cannot reasonably be expected to be cured within a reasonable time period, after written notice given to Consultant by the Board.

(ECF #14, Ex. 1, ¶ 9(a)). While only one of the four grounds is required to establish a "termination

with cause," Defendants contend that grounds (ii), (iii), and (iv) were all satisfied in this case.[2] Based on the arguments and evidence presented by each side in this litigation, there remain material questions of fact as to whether Plaintiff can show that grounds (ii), (iii), and (iv) were not met in connection with his termination.

With regard to ground (ii), there is contradictory evidence as to who the CEO of the Parent was at the time of Mr. Holson's termination, and/or at the time of his performance under the agreement up until his termination.[2] Plaintiff contends that Mr. Guccione was the CEO for the relevant time period, while Defendants argue that Dr. Dagnall held that position at the time of Mr. Holson's termination. There is also a material dispute as to whether the appropriately identified CEO referenced in grounds (ii) was or was not satisfied with Mr. Holson's performance of the duties, responsibilities, and services assigned or delegated under the Agreement. There has been no citation to any evidence suggesting that Mr. Guccione was dissatisfied with Mr. Holson's performance under the contract at the time of his termination. Further, there is insufficient evidence to establish as a matter of law that Dr. Dagnall was dissatisfied with Mr. Holson's actual performance under the Agreement at the time of his termination. As the termination letter was delivered following Mr. Holson's plea, but prior to his sentencing, and did not address any past performance issues or concerns about how Mr. Holson had performed the duties and responsibilities outlined in the Agreement, there is sufficient evidence to allow Plaintiff to argue that Dr. Dagnall was not

---

[2] Defendants have not argued in their Motion for Partial Summary Judgment or in their Opposition to Plaintiff's Motion for Summary Judgment that the crimes committed by Plaintiff equate to felonies "involving deceit, dishonesty or fraud."

[2] The parties agree that there was no COO of the Company at the time of Mr. Holson's termination.

dissatisfied with Mr. Holson's past or current performance, but that Dr. Dagnall terminated him solely on the basis of his guilty plea.[3] There is also, however, some testimony from Dr. Dagnall that would suggest he was not entirely satisfied with Mr. Holson's performance prior to his termination. Therefore, a material question of fact remains as to who the relevant CEO was for purposes of the termination for cause definition, and whether the relevant person was, in fact, dissatisfied with Mr. Holson's performance under the Agreement at the time of his termination.

Ground (iii) requires a finding that Mr. Holson committed gross negligence of willful misconduct "with respect to the Company." While Defendants do not contend that Mr. Holson's actions leading up to his conviction were in any way connected to his work or directly harmed the Company, they argue that "notoriety surrounding his arrest" created a social and professional stigma that attached to Mr. Holson and created negative consequences for the Company. They further, argue that Mr. Holson as much as admitted the same when he resigned from the Board because competitors could use his presence against the Company. Mr. Holson, however, contends that although his plea may have involved the Company in negative press, he committed no negligence or misconduct "with respect to the Company." The Court finds the phrase "with respect to the Company" renders this provision ambiguous under the circumstances. The question of whether the phrase requires negligence or misconduct stemming from or aimed at the Company, or whether misconduct that has some direct or indirect negative consequence for the Company will satisfy the language is a question better suited for determination at trial.

---

[3] The letter, dated August 14, 2009 stated: "as a result of your guilty plea on August 6, 2009 to several criminal charges and the events surrounding those charges, [Defendants] have decided to terminate the Consulting Agreement...for Cause...effective immediately... We thank you for and appreciate all of your efforts in building the Companies over the years." (ECF #14, Ex. 11).

Finally, ground (iv) also raised triable issues. This ground for termination requires a finding that Plaintiff *materially* breached his obligations under the Agreement; that the breach, in the *reasonable* judgment of the Board, the breach could not be expected to be cured in a *reasonable* time period, *after written notice* was given to the Consultant by the Board. There is a question under the facts and circumstances of this case as to whether at the time of termination Mr. Holson had materially breached his obligations under the Agreement; whether knowing what they did at the time of termination, the Board could have reasonably believed that he could not cure any such breach within a reasonable time; whether prior written notice of the alleged breach was necessary or if only a belief of inability to cure even if notice had been provided would satisfy the requirement; and /or whether written notice was essentially satisfied by the termination letter and a following period within which the alleged breach was not, in fact, capable of being cured.

Defendants argue that Mr. Holson materially breached the agreement by failing to appear, in person, four to eight times a month, and for failing to even be available for phone or in-person consultation during the six months he was in prison. The termination letter, however, was sent prior to Mr. Holson's sentencing, so any breach based on his incarceration, or supposed sentence would have been anticipating a breach that had not yet occurred. Further, the materiality of the in-person visitation requirement is a disputed issue of fact. Although Defendants strongly assert that Mr. Holson was required to show up, in person, at the company four to eight times a month, the contract actually is not that clear. The obligation as articulated in the Agreement was to "perform such duties as may be determined by the Chief Operating Officer of the Company and the Chief Executive Officer of the Parent," and to "make himself available in any event to provide consulting services on site for at least four (4) and not more than eight (8) days per month... or such other time

commitment as may be mutually agreed upon by the parties." (ECF #14, Ex. 1, ¶ 3). This last phrase added to the outline of consulting obligations renders prior unwritten agreements by the parties relevant, where in most cases such evidence would be considered parole evidence not admissible to show changes to a written contract. Thus, although it is apparent that once incarcerated, Mr. Holson could not satisfy an obligation to provide on site consulting four to eight times a month, there is no evidence that at the time of his termination Defendant expected him to be sentenced to prison time, nor is there clear evidence one way or the other as to whether there may have been a prior mutual agreement by the parties in effect which altered this time commitment in compliance with the terms of the written Agreement. For all these reasons, there remain material questions of fact as to whether the requirements for executing a termination with cause were met when the Defendants terminated Mr. Holson's Consulting Agreement.

II. Unjust Enrichment

Defendants argue that Plaintiff's unjust enrichment claim is barred by issue preclusion or collateral estoppel, and by claim preclusion, because the state court decided the unjust enrichment claim in favor of Defendant and certified this decision as a final judgment. Plaintiff contends that the state court's decision to dismiss the unjust enrichment claim has no preclusive effect because it did not resolve all of the remaining issues in the case.

Federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Baker by Thomas v. Gen. Motors Corp., 522 U.S. 222, 246 (1998)(citation omitted). Therefore, "a federal court must look to the law of the rendering state to determine whether and to what extent that prior

-11-

judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). In this case, this rule dictates that we apply the preclusion principles that have been adopted as Ohio law.

Under Ohio law, issue preclusion prevents the "relitigation in a second action of... issues that have been actually and necessarily litigated and determined in a prior action." *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 981 (Ohio 1983). The determination of an issue or fact in a prior action is preclusive when: (1) the issue was actually and directly litigated in the prior action; (2) the issue was passed upon and determined by a court of competent jurisdiction; and, (3) the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action. *See, Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994). The state court's decision dismissing the unjust enrichment claim satisfies all three requirements for issue preclusion in this case.

> The state court held:
>
> Defendants are entitled to summary judgment as a matter of law, as to the unjust enrichment claim set forth in the Second Claim for Relief of Plaintiffs Amended Complaint. There is no evidence of any unjust enrichment or value received by Defendants as the result of any voluntary actions on the part of the Defendant following his termination.

(State Court Judgment, ¶1 [Ex. 17]). The issue of whether Mr. Holson enriched the Defendants, following his termination is the same issue behind his current unjust enrichment claim and was fully and necessarily litigated through summary judgment briefing in the state court proceedings. The state court directly addressed and decided the issue, finding no evidence was presented that would support a finding of unjust enrichment or value received by the Defendant from Plaintiff following his termination. Further, the parties to that state court action are the same parties addressing the

-12-

unjust enrichment claim before this court. As all three factors necessary for a finding of issue preclusion are present, Plaintiff cannot relitigate his allegation that he enriched or provided value to the Defendants following his termination. Without a finding of enrichment or value received by Defendants, his claim for unjust enrichment cannot be proven, and the claim fails as a matter of law.

Defendants claim for unjust enrichment is also barred by claim preclusion under Ohio law. Claim preclusion prevents the relitigation of a "final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction...." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995). The state court's judgment granting summary judgment on the Plaintiff's unjust enrichment claim is a final judgment on that claim. The state court certified the unjust enrichment judgment as final, even though it did not dispose of all of the matters before the court, by issuing a "no just reason for delay" certification pursuant to Fed. Civ. R. 54(B). "[A]n order that disposes of fewer than all the claims in an action, and contains a Civ. R. 54(B), that there is no just reason for delay" is a final order under Ohio law if it fully disposes of a claim requiring "proof of substantially different facts," involves separate legal issues, and provides "different relief from the remaining claim(s)." *Walker v. Firelands Cmty. Hosp.*, 2006 WL 1580038, ¶ 23 (Ohio Ct. App. 6th Dist., June 9, 2006); *see also, Ferraro v. B.F. Goodrich Co.,* 777 N.E.2d 282, 307-08 (Ohio Ct. App. 9th Dist. 2002); *Todd Dev. Co., Inc. V. Morgan*, 2006 WL 2663002, ¶¶ 12-14 (Ohio Ct. App. 12th Dist., Sept. 18, 2006), rev'd in part on other grounds by 880 N.E.2d 88 (Ohio 2008). The unjust enrichment claim denied by the state court was (and its counterpart is) based on a different legal theory and different facts, and if proved could have resulted in different relief from the remaining breach of contract (and replevin) claims. Therefore, the state court's judgment against Plaintiff on his unjust enrichment claim was a final appealable order and is entitled to preclusive

effect. A party should not be allowed to avoid an adverse state court finding or judgment by abandoning the remainder of his case and re-filing in federal court.[4] *See, Birgel v. Bd. of Commissioners of Butler Cnty.*, 125 F.3d 948 (6th Cir. 1997); *Employees Own Fed. Credit Union v. City of Defiance*, 752 F.2d 243 (6th Cir. 1985).

## Conclusion

For the reasons set forth above, Defendants' motion for partial summary judgment (ECF #14) is granted in part and denied in part. Plaintiff's unjust enrichment claim is dismissed with prejudice. Plaintiff's motion for summary judgment (ECF #15) is denied. Trial is set for December 2, 2013 at 8:30 a.m.. A trial order will issue. IT IS SO ORDERED.

 /s/ Donald C. Nugent
 DONALD C. NUGENT
 United States District Judge

DATED: October 21, 2013

---

[4] Further, even had the unjust enrichment claim not been barred by both issue and claim preclusion under Ohio law, Plaintiff failed to present any evidence whatsoever that would support a finding that he had a reasonable expectation of payment for any alleged consulting he performed following the receipt of his termination letter. (Holson Depo. at 98:1-99:1 [Ex. 2]).